**Affirmed in part and Reversed in part and Opinion Filed August 29, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-01260-CV

### WILLIAM FRANCIS AND INCLINE ENERGY PARTNERS, L.P., Appellants

### V.

### PHOENIX CAPITAL GROUP HOLDINGS, LLC, Appellee

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-06350**

## MEMORANDUM OPINION

Before Justices Nowell, Goldstein, and Breedlove
Opinion by Justice Breedlove

Appellants William Francis (Francis) and Incline Energy Partners, L.P. (Incline) appeal the trial court's November 9, 2022 order partially granting and partially denying their motion to dismiss appellee Phoenix Capital Group Holdings, LLC (Phoenix)'s claims under the Texas Citizens Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). We reverse the portions of the trial court's judgment denying dismissal of Phoenix's claims for: (1) disparagement; (2) defamation; (3) tortious interference with prospective contract; (4) conspiracy;

and (5) unfair competition.  We affirm the portion of the trial court's judgment denying dismissal of Phoenix's claim for defamation per se, and we remand the case for further proceedings on that cause of action, as well as on the issue of attorney's fees.

## I.    BACKGROUND[1]

Incline and Phoenix are direct competitors in the oil and gas industry.  Francis serves as Incline's managing partner.   Incline also competes with companies previously operated by Adam Ferrari with whom Incline had previously been involved in business disputes and litigation. In 2019, Ferrari pleaded guilty to a felony theft charge related to forgery of deeds in a mineral transaction, and Incline obtained information regarding Ferrari's criminal proceedings in litigation between one of Ferrari's businesses and an affiliate of Incline.  In exchange for his guilty plea Ferrari received a deferred sentence pursuant to which the felony charge would be dismissed following the expiration of three years upon compliance with the terms of his probation.  Ferrari's criminal records were then sealed, and the felony charge was dismissed in 2022.  Ferrari's arrest and plea deal became the subject of articles published in *The Greeley Tribune*, a local newspaper, as well as the *Denver Post*.

---

[1] Many of the facts of this case are disputed; therefore, we limit our discussion to those facts necessary to our analysis and, where specific facts necessary to our analysis are disputed, we identify both parties' assertions.

At some point after receiving the documents related to Ferrari's criminal background, Incline began investigating Ferrari's possible involvement with Phoenix. While Incline asserts that Ferrari controls Phoenix as its CEO and that Phoenix has attempted to conceal Ferrari's role within the company, Phoenix contends that Ferrari is only one of many non-executive consultants it employs. Specifically, Phoenix asserts that Ferrari's role is limited to being a "Petroleum Engineering Consultant." Phoenix offered evidence that it has no CEO and instead is managed by Manager and COO Lindsey Wilson, along with CFO Curtis Roger Allen.

The present dispute centers primarily on an email sent by Francis to Crystal Taylor on June 17, 2021 (the "Taylor email").[2] Both Phoenix and Incline sought a potential transaction with the family of Sheila Krystal, a landowner with mineral interests in Colorado. Taylor is Krystal's niece. In April 2021, Incline contracted with the Krystal family to purchase certain oil and gas interests. The deed conveying those interests to Incline was recorded on June 2, 2021. At some point, Phoenix made a competing offer and characterized Incline's offer as a "low ball" offer, prompting some of Krystal's family members, led by Taylor, to seek to renegotiate the deal with Incline. In response, Francis sent the following to Taylor:

---

[2] Phoenix also alleged that Francis sent an anonymous package to First International Bank & Trust (FIBT) containing allegedly defamatory content. The trial court dismissed the portions of the lawsuit relying on the FIBT package, and Phoenix does not cross-appeal. Therefore, our discussion is limited only to the Taylor email.

You citing Phoenix/Ferrari as the other offer/group that is telling you that we low balled you is all the information I need to know. We made your aunt aware of those permits when she had called us and not the other way around.

I would love nothing more than to defend my company's track record versus the misdeeds that Phoenix/Ferrari has performed over the years. Namely, the fact that their CEO was arrested and convicted for forging a mineral owners signature in order to defraud her of hundreds of thousands of dollars.

Francis also included the links to several articles regarding Ferrari's criminal history.

Phoenix filed suit on June 15, 2022, alleging: (1) defamation and defamation per se, libel and libel per se, slander and slander per se; (2) business disparagement; (3) tortious interference with contract; (4) tortious interference with prospective contract and relationship; (5) unfair competition; and (6) civil conspiracy. Francis and Incline filed a general denial and affirmative defenses on July 8, 2022. Francis and Incline filed a motion to dismiss under the TCPA on August 16, 2022. Phoenix filed objections to evidence submitted along with Francis's and Incline's motion to dismiss on September 29, 2022, along with their response to the motion to dismiss. Francis and Incline filed their own motion to strike evidence on October 3, 2022. The trial court held a hearing on the motions to strike as well as the motion to dismiss on October 6, 2022, and entered an order on November 8, 2022 partially granting and partially denying objections from both sides. On November 9, 2022, the trial court entered an order partially granting and partially denying appellants' TCPA

motion to dismiss. More specifically, the order reads that Francis's and Incline's motion to dismiss

> is denied except as to the tortious interference with a [sic] existing contract claim and, to the extent that such claims rest upon statements other than the Taylor email, Plaintiff's defamation and business disparagement claims are dismissed to that extent only. It is further ordered that movant is awarded $10,000 for reasonable and necessary costs and fees in defending against the dismissed legal action.[3]

Francis and Incline appealed the trial court's ruling on November 23, 2022. In five issues, they complain that the trial court erred: (1) in denying the motion to dismiss regarding the disparagement and defamation claims relying on the Taylor email; (2) in denying the motion to dismiss regarding the tortious interference with prospective contract claim; (3) in denying the motion to dismiss regarding the conspiracy and unfair competition claims; (4) regarding evidentiary objections, which likely resulted in the improper denial of their motion; and (5) by abusing its discretion regarding the fee award.

## II.    APPLICABLE LAW

The TCPA is Texas's anti-SLAPP law, providing a means to dismiss so-called "Strategic Lawsuits Against Public Participation." *Krasnicki v. Tactical Entm't, LLC*, 583 S.W.3d 279, 282 (Tex. App.—Dallas 2019, pet. denied). The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory

---

[3] The order is unclear whether by "movant" the court means both Francis and Incline, and if so, whether the award is for $10,000 to each party or $10,000 split between the two moving parties.

lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). That protection comes in the form of a motion to dismiss suits, or claims within suits, that appear to stifle the defendant's exercise of those rights. *Barnes v. Kinser*, 600 S.W.3d 506, 509 (Tex. App.—Dallas 2020, pet. denied); *see White Nile Software, Inc. v. Carrington, Coleman, Sloman & Blumenthal, LLP*, No. 05-19-00780-CV, 2020 WL 5104966, at *4 (Tex. App.—Dallas Aug. 31, 2020, pet. denied) (mem. op.). We construe the TCPA liberally to fully effectuate its purpose and intent. TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(b). We review a trial court's ruling on a TCPA motion to dismiss de novo. *Mireskandari v. Casey*, 636 S.W.3d 727, 734 (Tex. App.—Dallas 2021, pet. denied). In our review, we consider the pleadings, evidence a court could consider under civil procedure rule 166a, and any supporting and opposing affidavits stating the facts on which the liability or defense is based. *Id.* at 735.

Under the TCPA, a party may file a motion to dismiss a legal action based on or in response to a party's exercise of the right of free speech. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). "Exercise of the right of free speech" means a communication made in connection with a matter of public concern. *Id.* § 27.001(3). A "matter of public concern" is defined as a statement or activity regarding:

    (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;

    (B) a matter of political, social, or other interest to the community; or

–6–

(C) a subject of concern to the public.

*Id.* § 27.001(7).

The TCPA process generally involves three steps. *Mireskandari*, 636 S.W.3d at 734. First, the TCPA movant has the burden to demonstrate the nonmovant's legal action is based on or in response to the moving party's exercise of the right of association, right of free speech, or the right to petition. *Id.* Second, if the movant meets its step-one burden, the burden of proof shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim. *Id.* Third, if the nonmovant meets its step-two burden, the burden of proof shifts back to the movant to establish an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law. *Id.* at 735. If the nonmovant either cannot meet its step two burden or the movant establishes an affirmative defense, the motion to dismiss will be granted. *Id.*

### III.    DISCUSSION

**A.    TCPA Step One**

Because we review the denial of a motion to dismiss under the TCPA de novo, we first consider whether the appellants have satisfied their step-one burden. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Thomas v. Wm. Charles Bundren & Assocs. Law Grp. PLLC*, No. 05-20-00632-CV, 2021 WL 3159795, at *3 (Tex. App.—Dallas July 26, 2021, no pet.) (mem. op.). In conducting

our review, we consider the pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and supporting and opposing affidavits stating the facts on which the liability or defense is based. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a). More specifically, we must determine whether the Taylor email, the communication upon which Phoenix's lawsuit rests, constitutes a matter of public concern. *Id.* § 27.001(7). For a movant to trigger the TCPA's dismissal framework, there must first be a "communication" as defined by section 27.001(1). *Id.* § 27.001(1).

The relevant portion of the Taylor email states:

[T]he fact that their CEO was arrested and convicted for forging a mineral owners [sic] signature in order to defraud her of hundreds of thousands of dollars.

Neither party challenges whether the Taylor email is a "communication." Therefore, we must analyze whether the statement was made while exercising the right of free speech. *See Thomas*, 2021 WL 3159795, at *5. The "exercise of the right of free speech" means "a communication made in connection with a matter of public concern." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3).

A "matter of public concern" means "a statement or activity regarding: (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter

of political, social, or other interest to the community; or (C) a subject of concern to the public." *See id.* § 27.001(7)(A)–(C).[4]

We are constrained by this court's interpretation of "matter of public concern," which includes within its ambit "criminal acts." *See Garcia v. Semler*, 663 S.W.3d 270, 281 (Tex. App.—Dallas 2022, no pet.) (communication alleging theft of estate sale signs is a matter of public concern because "[i]t is well-settled that even after the 2019 amendments, 'criminal acts are matters of public concern'"); *Austin v. Amundson*, No. 05-22-00066-CV, 2022 WL 16945911, at *3 (Tex. App.—Dallas Nov. 15, 2022, no pet.) (mem. op.) (allegation of road rage is a matter of public concern); *Page v. Bakewell*, No. 05-21-00905-CV, 2022 WL 4007879, at *4 (Tex. App.—Dallas Sept. 2, 2022, no pet.) (mem. op.) (communication alleging the hiring of a hit man to "take care" of ex-wife is a matter of public concern); *Beard v. McGregor Bancshares, Inc.,* No. 05-21-00478-CV, 2022 WL 1076176, at *6 (Tex. App.—Dallas Apr. 11, 2022, pet. denied) (mem. op.) (statements about the killing of Joanna Gaines' goats implicated a matter of public concern because they concerned criminal activity); *Miller v. Schupp*, No. 02-21-00107-CV, 2022 WL 60606, at *2 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.) (mem. op.) (Instagram

---

[4] In 2019, the legislature amended the definition of "matter of public concern." The prior definition included: "(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." Act of May 18, 2011, 82nd Leg., R.S., Ch. 341, 2011 Tex. Gen. Laws 961, 962 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)).

message alleging drug addition, sexual assault, and physical assault is a matter of public concern); *CBS Stations Grp. of Tex., LLC v. Burns*, No. 05-21-00042-CV, 2021 WL 4398031, at *3 (Tex. App.—Dallas Sept. 27, 2021, no pet.) (mem. op.) (news broadcast involving robbery, high-speed chase, and arrest of suspect is a matter of public concern).

Incline's accusation that Phoenix's CEO "was arrested and convicted for forging a mineral owners [sic] signature in order to defraud her of hundreds of thousands of dollars" is a communication regarding an allegation of criminal activity. *See* TEX. PENAL CODE ANN. § 32.21 (forgery). Phoenix argues, however, that this particular communication is not a subject of concern to the public because the allegation was made in a private communication, between private parties, regarding a private transaction, which affects only the fortunes of the parties to the communication. Phoenix asks this court to reject a bright line rule that all communications regarding criminal activity are a matter of public concern, without regard to the content, form, and context of the speech. *See Saks & Co., LLC v. Li*, 653 S.W.3d 306, 316 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (finding "dubious" the proposition that any statement about the commission of a crime is matter of public concern). Phoenix asserts that the content, form, and context of the speech removes it from the scope of a matter of public concern because the Taylor email was not addressed to the community and was not a news report, a statement made to law enforcement, or a public social media post.

–10–

We need not reach the broader question of whether every communication regarding criminal activity is a subject of concern to the public because the Taylor email fits squarely within the scope of "public concern" that has been adopted by this court. Phoenix's focus on the fact that the allegation was shared in a private email is misplaced because whether Incline had posted its allegations of criminal activity on a public social media post, rather than in a private email, does not change the subject matter of the allegation or the TCPA analysis. The TCPA does not require a communication to be public in order for it to constitute a matter of public concern. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam) (holding that despite the private context of a private email regarding the employment of a nurse anesthetist, the communication nevertheless amounted to a matter of public concern because it regarded the provision of medical services by a health care professional).[5]

Because the Taylor email regards a matter of public concern, we conclude that Francis and Incline have satisfied their step-one burden. *See Page*, 2022 WL

---

[5] During oral argument and in subsequent briefing, the parties considered the applicability of *Morris v. Daniel*, 615 S.W.3d 571, 573, 578 (Tex. App.—Houston [1st Dist.] 2020, no pet.), to the present case. We find *Morris* distinguishable. In that case, the general subject of the communication, the health and safety of children, was a matter of public concern, but the specific issue identified in the communication, the health and safety of one child, was not because it affected only the concerns of that specific child. *Id.* By contrast, the criminal history and continued involvement of Ferrari with a large-scale oil and gas company is potentially relevant to anyone involved in the buying and selling of mineral rights in the areas the parties do business. The present case is therefore more analogous to *Lippincott*. *See Lippincott*, 462 S.W.3d at 508, discussed above.

4007879, at \*4; *Beard*, 2022 WL 1076176, at \*6.  We now turn to consider whether Phoenix satisfied its burden under step two.

## B.    TCPA Step Two

Because Francis and Incline satisfied their initial burden, we now move to step two of the burden-shifting analysis: whether Phoenix established by clear and specific evidence a prima facie case for each essential element of its claims for defamation,[6] defamation per se, business disparagement,[7] tortious interference,[8] and civil conspiracy.[9] [10]  TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

---

[6] The elements of a defamation action include (1) publication of a false statement of fact to a third party; (2) that was defamatory concerning the plaintiff; (3) with the requisite degree of fault; and (4) caused damages.  *In re Lipsky*, 460 S.W.3d at 594.  The plaintiff must plead and prove damages, unless the defamatory statements are defamatory per se.  *Id.* at 593. Defamation per se refers to statements that are so obviously harmful that general damages may be presumed.  *See id.* at 592.  The elements of a defamation per se claim are similar to that of a claim for defamation and differ only in that damages are presumed.  *See Van Der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App.—Fort Worth 2017, pet. denied).

[7] To prevail on a business disparagement claim, the plaintiff must establish that (1) the defendant published disparaging words about the plaintiff's economic interests; (2) with malice; (3) without privilege; (4) that resulted in special damages.  *Marketshare Telecom, L.L.C. v. Ericsson*, 198 S.W.3d 908, 924–25 (Tex. App.—Dallas 2006, no pet.).

[8] The elements of a tortious interference with prospective business relations claim are: (1) there was a reasonable probability that plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.  *Coinmach Corp. v. Aspenwood Apt. Corp.*¸ 417 S.W.3d 909, 923 (Tex. 2013).  Phoenix plead tortious interference with existing contract but limits itself to tortious interference with prospective contract and business relations on appeal.

[9] The elements of civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.  *RTLC AG Prod. Inc. v. Treatment Equip. Co.*, 195 S.W.3d 824, 833 (Tex. App.—Dallas 2006, no pet.).

[10] Phoenix also pleaded "unfair competition" but provided no elements or legal analysis to support its claim beyond the mere assertion that Francis's defamatory and tortious conduct constituted unfair competition.  Accordingly, Phoenix has not presented anything for our review on this claim.  TEX. R. APP. P. 38.1.

"[A prima facie case, in its traditional legal meaning] refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d at 590. A prima facie standard generally requires only the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam)). "Prima facie evidence is evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue. In other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citation omitted), *disapproved on other grounds by In re Lipsky*, 460 S.W.3d at 587–88).

"[A] plaintiff must provide enough detail to show the factual basis for its claim." *In re Lipsky*, 460 S.W.3d at 591; *see D Magazine Partners, L.P. v. Rosenthal*, 475 S.W.3d 470, 480 (Tex. App.—Dallas 2015), *aff'd in part, rev'd in part on other grounds*, 529 S.W.3d 429 (Tex. 2017). "Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case." *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.) (op. on reh'g). In other words, "bare, baseless opinions" are not "a sufficient substitute for the clear and specific evidence required to establish a prima facie case" under the Act. *In re*

–13–

*Lipsky*, 460 S.W.3d at 592. "Opinions must be based on demonstrable facts and a reasoned basis." *Id.* at 593.

### 1. *Defamation, business disparagement, tortious interference with prospective contract, and civil conspiracy*

With the sole exception of defamation per se, all of Phoenix's causes of action require a showing of damages; therefore, we turn first to evaluating whether Phoenix established a prima facie case of damages.

Phoenix alleges that the evidence shows that the Taylor email "(1) interfered with and disrupted Phoenix's business and economic interest with Taylor and her family; (2) harmed Phoenix's reputation; (3) caused Taylor not to do business with or sell mineral rights to Phoenix; and (4) caused Taylor to do business with and sell mineral rights to Incline despite Incline's substantially inferior 'low ball' offer." The evidence Phoenix relies on to support this assertion is the Taylor email itself as well as the fact that Krystal did not ultimately sell mineral rights to Phoenix. However, Phoenix fails to address the timeline of events showing that Incline and Krystal had already entered into a contract for the subject mineral rights prior to Phoenix's involvement.

According to the mineral and royalty deed offered by Phoenix as an exhibit to its response to the TCPA motion to dismiss, the deed transferring Krystal's mineral rights to Incline was effective as of April 1, 2021, was signed and notarized by Sheila Krystal on May 19, 2021, and was recorded in the Dunn County records on June 2,

2021. Phoenix's CFO, Curtis Allen, attests that the interests conveyed in that deed are the same interests that are the subject of Phoenix's offer referenced in Taylor's email. This evidence shows that, at the very latest, the transaction at issue between Krystal and Incline was completed by June 2, 2021. The Taylor email upon which Phoenix's claims are based was not sent until June 17, 2021. By the time Francis sent the Taylor email the mineral rights had already been transferred to Incline. Accordingly, the email came too late for any prospective interference with Phoenix's interests in the subject mineral rights.

Further, a close reading of the email from Taylor that prompted Francis's response does not support Phoenix's allegations that, if not for the Taylor email, the Krystal family would have sold its interests to Phoenix because its offer was twice that of Incline's. Instead, Taylor describes ongoing negotiations between Francis/Incline and Taylor regarding the price discrepancy in an attempt to seek a resolution. Taylor notes that "[w]e do very much appreciate your offer to make things right by honoring any other official offers during that time period" and provides Francis with the details of Phoenix's offer, ostensibly so that Incline could address the discrepancy as discussed. There is no suggestion in Taylor's email that she or the family were planning to breach their existing contract with Incline or to enter into a new agreement with Phoenix—every indication in the email instead suggests an ongoing attempt to resolve discrepancies with Incline despite Phoenix's higher offer.

Phoenix's Manager and COO Lindsey Wilson alleges in her affidavit that "Phoenix was close to closing the transaction with Ms. Krystal and Ms. Taylor, but after the email from Francis, Ms. Taylor had doubts about Phoenix and Incline ultimately purchased the mineral rights." However, not only is this statement contradicted by the clear timeline of events, her allegation that Phoenix was "close to closing the transaction" is unsupported by any evidence in the record. Phoenix offers no other evidence to support its assertion that the Taylor email caused damages.

Phoenix failed to establish a prima facie case for the essential element of damages; therefore, we sustain Francis's and Incline's first, second, and third issues as they apply to the defamation, business disparagement, tortious interference with prospective contract, and civil conspiracy claims. *See In re Lipsky*, 460 S.W.3d at 592.

### 2. *Defamation per se*

In addition to its other causes of action, Phoenix pled defamation per se. Unlike Phoenix's other causes of action, defamation per se does not require a showing of damages. *See Van Der Linden*, 535 S.W.3d at 198. Therefore, Phoenix can still carry its step two burden by making a prima facie showing of the elements of a defamation per se claim. *See id.*

Defamation per se refers to statements that are so obviously harmful that general damages may be presumed. *See In re Lipsky*, 460 S.W.3d at 592. General

–16–

damages include non-economic losses, such as loss of reputation and mental anguish. *Id.* Defamation per se is itself broken down into separate categories of falsehoods. *Id.* at 596. Accusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct are examples of defamation per se. *Id.* Remarks that adversely reflect on a person's fitness to conduct his or her business or trade are also deemed defamatory per se. *Id.* And whether a statement qualifies as defamation per se is generally a question of law. *Id.* If false and disparaging statements injure a corporation's reputation, it can sue for defamation per se just like flesh-and-blood individuals. *Waste Mgmt. of Texas, Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 151 (Tex. 2014). Francis and Incline do not argue that defamation per se is inapplicable to the facts of this case; therefore, we turn to consider whether Phoenix satisfied its step two burden on each element of defamation per se.

The elements of a defamation per se claim are similar to that of a claim for defamation: (1) the publication of a false statement of fact to a third party; (2) that was defamatory concerning the plaintiff; (3) with the requisite degree of fault. *In re Lipsky*, 460 S.W.3d at 593. Defamation per se differs only in that damages are presumed. *Van Der Linden*, 535 S.W.3d at 198.

### a. Publication of a false statement

Francis and Incline first contend that Phoenix cannot meet its burden on the first element of defamation per se because the allegedly defamatory statement in the

–17–

Taylor email was true "in its gist." Truth in the "gist" exists where the actual statement is no more "damaging to the person affected by it than a literally true statement would have been." *River Oaks L-M. Inc. v. Vinton-Duarte*, 469 S.W.3d 213, 239–40 (Tex. App.—Houston [14th Dist.] 2015, no pet.). To support this argument, they assert that the statement at issue is "Phoenix's CEO, Adam Ferrari, is a felon," and argue that because Ferrari pled guilty to a felony, the statement is true in its gist even though Ferrari ultimately completed probation and was cleared of the felony charges as a result.

However, Francis's and Incline's assertion ignores the plain text of the statement in an attempt to distinguish what Francis allegedly "meant" from what he actually said. Unlike appellants' rewriting of the statement, the actual email said "the fact that their CEO was arrested and convicted for forging a mineral owners signature in order to defraud her of hundreds of thousands of dollars." A factual restatement of the allegedly disparaging statement at issue, then, can be condensed to "Phoenix's CEO is a felon," and Phoenix has met its burden of providing competent evidence demonstrating that Phoenix does not have a CEO and that none of its executives have been convicted of a felony.

### b. Defamatory concerning the plaintiff

Francis and Incline argue that Phoenix cannot meet its burden on this element because Phoenix failed to address how or why the email's assertion of Ferrari's relationship with Phoenix was defamatory; however, this again requires us to read

additional words into the Taylor email that are not there. Francis and Incline do not argue that the statement "Phoenix's CEO is a felon" is not defamatory; indeed, Texas law provides that this is exactly the type of statement that satisfies the showing required under a defamation per se standard. *See In re Lipsky*, 460 S.W.3d at 596 (holding remarks that adversely reflect on a person's fitness to conduct his or her business or trade are defamatory per se). Therefore, Phoenix has established a prima facie showing of the second element of defamation per se.

### c. Requisite degree of fault

A private individual need only prove negligence to prevail on a defamation per se claim. *Id.* at 593. To prove negligence, a private individual must show "that the publisher . . . knew or should have known that the defamatory statement was false." *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819 (Tex. 1976). Although appellants allege that they believe that a felon (Ferrari) actually is acting as Phoenix's CEO despite their attempts to conceal the extent of his involvement, the court must review the evidence in the light most favorable to Phoenix, the claimant/nonmovant. *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied). The evidence provided by Phoenix satisfies a prima facie showing that Incline and Francis, as regular business competitors experienced in dealing with Phoenix and its executives, should have known that the statement was false, despite its allegations of having conducted research that created the suspicion of Ferrari's deeper involvement with Phoenix. *See D Magazine*

–19–

*Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 437–40 (Tex. 2017) (holding that a prima facie showing of negligence was made in spite of evidence that raised suspicion of the allegedly defamatory statement's truth).

Because Phoenix has satisfied its step two burden regarding its defamation per se claim, we turn to step three of the TCPA analysis. *See Mireskandari*, 636 S.W.3d at 735.

## C.    TCPA Step Three

If the nonmovant meets its step-two burden, the burden of proof shifts back to the movant to establish an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law. *Id.* One such affirmative defense to defamation per se is privilege, an affirmative defense which Francis and Incline pled. *See In re Lipsky*, 460 S.W.3d at 592; *Butler v. Cent. Bank & Tr. Co.*, 458 S.W.2d 510, 514 (Tex. App.—Dallas 1970, writ dism'd).

Qualified privilege in the context of defamation includes all communications made in good faith on any subject matter in which the author has an interest. *Id.* Circumstances that may give rise to the privilege include:

> (1) a belief that publication protects the publisher's interest; (2) a belief that publication protects the interest of certain recipients or third persons; (3) a belief that a person sharing a common interest in the published information is entitled to know that information…and (5) a belief that an important public interest requires publication.

*Steinhaus v. Beachside Envtl. LLC*, 590 S.W.3d 672, 677 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). As discussed in detail above, at the time of the Taylor

–20–

email, Incline produced evidence demonstrating that it had an existing contract with the Krystal family as well as an ongoing business relationship which Phoenix was attempting to disrupt. Accordingly, we conclude that Francis and Incline have provided evidence raising the affirmative defense of privilege, and we remand the case to the trial court for further consideration of this issue. *See id.*

Because we sustain issues one through three, we need not address appellants' fourth issue. TEX. R. APP. P. 47.1. Further, our disposition of issues one through three require us to remand the case to the trial court for reconsideration of the award of attorney's fees challenged in issue five; therefore, we do not address it here. *Id.*

## IV. CONCLUSION

We reverse the portions of the trial court's judgment denying dismissal of Phoenix's claims for: (1) disparagement; (2) defamation; (3) tortious interference with prospective contract; (4) conspiracy; and (5) unfair competition. We affirm the portion of the trial court's judgment denying dismissal of Phoenix's claim for defamation per se, and we remand the case for further proceedings on that cause of action as well as on the issue of attorney's fees.

221260f.p05

/Maricela Breedlove/
_____
MARICELA BREEDLOVE
JUSTICE

–21–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WILLIAM FRANCIS AND INCLINE ENERGY PARTNERS, L.P., Appellants

No. 05-22-01260-CV  V.

PHOENIX CAPITAL GROUP HOLDINGS, LLC, Appellee

On Appeal from the 116th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-22-06350.

Opinion delivered by Justice Breedlove. Justices Nowell and Goldstein participating.

In accordance with this Court's opinion of this date, the trial court's November 9, 2022 "Order Partially Granting and Partially Denying Defendants' TCPA Motion to Dismiss" is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's order denying appellee Phoenix Capital Group Holdings, LLC's motion to dismiss appellants William Francis and Incline Energy Partners, L.P.s' claims for disparagement, defamation, tortious interference with prospective contract, conspiracy, and unfair competition.

In all other respects, the trial court's order is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 29th day of August, 2023.